UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- ⅹ
JOHN BRUSO,

    Plaintiff,

             CASE NO.: _____

  -against-

CORINDUS VASCULAR ROBOTICS, INC.,
MARK J. TOLAND, DAVID W. LONG,
DOUGLAS TEANY, JEFFREY C.
LIGHTCAP, JEFFREY G. GOLD,
CAMPBELL D. ROGERS, M.D., JAMES R.
TOBIN, LOUIS A. CANNON, M.D.,
NATHAN R. HARRINGTON, DOUGLAS L.
BRAUNSTEIN, and JOHN K. BAKEWELL

    Defendants.
--------------------------------------- ⅹ

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

  Plaintiff, John Bruso ("Plaintiff"), on behalf of himself, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

  1. This is an action brought by Plaintiff against Corindus Vascular Robotics, Inc. ("Corindus" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Corindus, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger of Siemens Medical Solutions

USA, Inc. ("Siemens") with Corindus.

2.      On August 7, 2019, Siemens and Corindus entered into an Agreement and Plan of Merger (the "Merger Agreement"), providing for Siemens's acquisition of Corindus, pursuant to a merger between Siemens and Corindus, with Siemens as the surviving corporation (the "Proposed Transaction").

3.      Under the terms of the Merger Agreement, Corindus stockholders will have the right to receive (i) $4.28 in cash, without interest, (the "Common Stock Consideration"), for each share of common stock, par value $0.0001 per share, of Corindus ("Corindus Common Stock") and (ii) $85.60 in cash (the "Preferred Stock Consideration"), for each share of Series A Convertible Preferred Stock, par value $0.0001 per share, of Corindus (the "Series A Preferred Stock") and for each share of Series A-1 Convertible Preferred Stock, par value $0.0001 per share, of Corindus (the "Series A-1 Preferred Stock" and, together with the Series A preferred stock, the "Corindus Preferred Stock"), that they own immediately prior to the effective time of the merger (the "Merger Consideration").

4.      On August 30, 2019, in order to convince Corindus's public common shareholders to vote in favor of the Proposed Transaction, Defendants took a step forward and authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Corindus and Siemens; and (ii) the key inputs for the financial analyses performed by RBC Capital Markets, LLC ("RBCCM and Lazard Frères & Co. ("Lazard") to support their fairness opinions.

6.      The Proposed Transaction is expected to close in the 4th quarter this year and the

special meeting of the Company's shareholders to vote on the Proposed Transaction can be scheduled at any time.  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting of Corindus shareholders so Plaintiff can properly exercise his corporate voting rights.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Plaintiff and Corindus's public common shareholders sufficiently in advance of the special meeting of the Company's shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has

minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  Indeed, Corindus's common stock is listed and traded on NYSE, which is also headquartered in this District.

<b><u>PARTIES</u></b>

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the holder of Corindus common stock.

12.     Defendant Corindus is a Delaware corporation that maintains its principal place of business at 309 Waverley Oaks Road, Suite 105, Waltham, Massachusetts 02452500 Dallas Street, Suite 2300, Houston, Texas 77002.  Corindus's common shares are traded on NASDAQ under the ticker symbol "CRZO."

13.     Defendant Mark J. Toland ("Toland") is, and has been at all relevant times, the Company's President and Chief Executive Officer.  Under the terms of the Proposed Transaction Toland will receive $ 42,447,669 for his Corindus options, $ 816,500 in severance payments and a one-time $2.5 million lump-sum cash transaction bonus.

14.     David W. Long ("Long") is, and has been at all relevant times, the Company's Senior Vice President and Chief Financial Officer.  Under the terms of the Proposed Transaction Long will receive $ 4,496,574 for his Corindus Options and $ 539,948 in severance payments.

15.     Douglas Teany ("Teany") is, and has been at all relevant times, the Company's Chief Operatng officer.   Under the terms of the Proposed Transaction Teany will receive

4

$4,495,350 for his Corindus Options

16.     Jeffrey C. Lightcap is, and has been at all relevant times, a director and Chairman of the Board.

17.     Defendant Jeffrey G. Gold is, and has been at all relevant times, a director of the Company.

18.     Defendant , Campbell D. Rogers, M.D., is, and has been at all relevant times, a director of the Company.

19.     Defendant James R. Tobin is, and has been at all relevant times, a director of the Company.

20.     Defendant Louis A. Cannon, M.D., is, and has been at all relevant times, a director of the Company.

21.     Defendant Nathan R. Harrington is, and has been at all relevant times, a director of the Company.

22.     Defendant Douglas L. Braunstein is, and has been at all relevant times, a director of the Company.

23.     Defendant John K. Bakewell is, and has been at all relevant times, a director of the Company.

24.     The defendants identified in paragraphs 13 through 23 are collectively referred to herein as the "Individual Defendants," the defendants identified in paragraphs 16 through 23 are refeered to herein as the "Board."   The Individual Defendants and the Board, together with Corindus, are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

25.     Corindus is a global technology leader in robotic-assisted vascular interventions. The Company's CorPath® platform is the first FDA-cleared medical device to bring robotic precision to percutaneous coronary and vascular procedures. CorPath GRX is the second-generation robotic-assisted technology offering enhancements to the platform by adding important key upgrades that increase precision, improve workflow, and extend the capabilities and range of procedures that can be performed robotically. Corindus is focused on developing innovative robotic solutions to revolutionize treatment of emergent conditions by providing specialized and timely medical care to patients around the world.

26.     Siemens claims to enable healthcare providers worldwide to increase value by empowering them on their journey towards expanding precision medicine, transforming care delivery, improving patient experience and digitalizing healthcare.  As a leader in medical technology, Siemens is constantly innovating its portfolio of products and services in its core areas of diagnostic and therapeutic imaging and in laboratory diagnostics and molecular medicine. In fiscal 2018, which ended on September 30, 2018, Siemens generated revenue of €13.4 billion and adjusted profit of €2.3 billion and has about 50,000 employees worldwide.

27.     On August 7, 2019, the Board caused the Company to enter into the Merger Agreement.  Pursuant to the terms of the Merger Agreement, the holder of each outstanding share of Corindus Common Stock will receive $4.28 per share in cash, and the holder of each share of Corindus Series A Preferred Stock will receive $85.60 per share in cash.

28.     On August 8, 2019 Corindus issued a press release announcing the Proposed Transaction, which stated in relevant part:

**CORINDUS VASCULAR ROBOTICS ANNOUNCES DEFINITIVE AGREEMENT TO BE
ACQUIRED BY SIEMENS HEALTHINEERS**

**-- Corindus Stockholders to Receive $4.28 Per Share --**

**-- All-Cash Transaction Valued at Approximately $1.1 Billion --**

WALTHAM, MA, August 8, 2019 – Corindus Vascular Robotics (NYSE American: CVRS), a leading developer of precision vascular robotics, today announced that it has entered into a definitive merger agreement to be acquired by Siemens Healthineers AG. Under the terms of the merger agreement, Siemens Medical Solutions, a wholly-owned subsidiary of Siemens Healthineers AG, a German stock listed company, will acquire all issued and outstanding shares of common stock of Corindus for $4.28 per share in cash, representing an aggregate purchase price of approximately $1.1 billion.

"We are pleased to have reached this agreement with Siemens Healthineers," said Mark J. Toland, President and Chief Executive Officer of Corindus. "We believe the transaction will deliver immediate, compelling and certain value to all Corindus stockholders, as well as substantial benefits to our customers. The combination of Siemens Healthineers' advanced, high-quality imaging, digital and artificial intelligence tools with Corindus' precision robotics platform has the potential to transform the way healthcare is delivered to those suffering from cardiovascular or peripheral disease. The tremendous technology synergies and shared vision between both companies should allow us to achieve a seamless integration between our businesses."

"Corindus has established a leading position in vascular robotics with a compelling technology platform for robotic-assisted coronary, peripheral, and neurovascular procedures," said Michel Therin, President, Advanced Therapies at Siemens Healthineers. "The acquisition of Corindus, combined with Siemens' strong advanced therapies portfolio will help further advance the growth of vascular robotics. The integration of our technologies could lead to reduced variability, improved efficiency, expanded access to care, and ultimately improved patient outcomes. We look forward to welcoming the Corindus team to Siemens Healthineers."

The transaction has been approved by the Board of Directors of Corindus and is expected to close in the fourth quarter of 2019, subject to approval by Corindus stockholders, the expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and the satisfaction of other customary closing conditions.

In connection with the transaction, Citigroup Global Markets Inc. is acting as

exclusive financial advisor to Corindus and Cadwalader, Wickersham & Taft LLP
is serving as its legal advisor.

**The Proxy Omits Material Information**

29.     On August 30, 2019, Defendants filed a materially incomplete and misleading
Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy
before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it
did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents
or omits material information that is necessary for the Company's shareholders to make an
informed voting decision in connection with the Proposed Transaction.

30.     First, the Proxy fails to provide enough information regarding financial
projections for the Company.  In particular, the Proxy fails to disclose: (i) Corindus' unlevered
free cash flows and/or after-tax free cash flows and its line items; (ii) all line items used to
calculate Corindus' EBITDA used in performing the Discounted Cash Flow Analysis ("DCF");
and (iii) a reconciliation of all non-GAAP to GAAP metrics employed by Citigroup Global
Markets Inc.'s ("Citi") in the financial analyses.  Second, the Proxy omits material information
regarding Citi's financial analyses.  Third, the Proxy omits any discussion of metrics underlying
the calculation of the Preferred Stock Consideration, including any unpaid dividends included in
the calculation of the Preferred Stock Consideration, or the fairness of the Common Stock
Consideration relative to the Preferred Stock Consideration.

31.     Investors are concerned, perhaps above all else, with the projections and cash
flows of the companies in which they invest.  Under sound corporate finance theory, the market
value of a company should be premised on the expected unlevered free cash flows of the
corporation.  Accordingly, the question that the Company's shareholders need to answer in

determining whether to vote in favor of the Proposed Transaction is clear:  Is the Merger Consideration fair compensation given Corindus's projected cash flows?  Without Corindus' unlevered free cash flows the Company's shareholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration.

32.     With respect to Citi's *Discounted Cash Flow Analysis* (the "DCF") for Corindus, as set forth above the Proxy fails to disclose unlevered free cash flows and/or  upon which the DCF analysis is based, as well as the basis for selecting perpetuity growth rates ranging from 5.0% to 6.0%, discount rates ranging from 10.9% to 13.0%, or the terminal multiples. Furthermore, Citi's DCF is based on unlevered free cash flows of Corindus and after-tax free cash flows of Siemens but yet the cash flows used are nowhere to be found in the Proxy.

33.     Moreover, Citi's DCF is further based upon "diluted share counts of Corindus calculated using the treasury stock method, based on equity information as of August 5, 2019 as provided by Corindus management" but fails to disclose any information with regards to the conversion of the Corindus Preferred Stock or whether management included the amount of dividends included in calculating the diluted share counts.  Additionally, the dividends payable on the Preferred Stock varied depending upon the trading price of Corindus Common Stock, but Citi failed to analyze the impact this variation in dividends would make on the diluted share counts over the course of period covered by the DCF.  Tellingly, Citi did not offer an opinion on the fairness of the Preferred Stock Consideration or the fairness of the Common Stock Consideration relative to the Preferred Stock Consideration.

34.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections

and then makes several key choices "each of which can significantly affect the final valuation."
Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices
include "the appropriate discount rate, and the terminal value . . . ." *Id.*  As Professor Davidoff
explains:

> There is substantial leeway to determine each of these, and any change can markedly affect
> the discounted cash flow value . . .  The substantial discretion and lack of guidelines and
> standards also makes the process vulnerable to manipulation to arrive at the "right" answer
> for fairness.  This raises a further dilemma in light of the conflicted nature of the investment
> banks who often provide these opinions[.]

*Id*. at 1577-78 (footnotes omitted).

35.    With respect to Citi's *Selected Companies Analysis* for Corindus the Proxy failed
to disclose the reason for only choosing comparable companies other than they operated in the
same general business segment.  Moreover, the Proxy the Proxy fails to disclose the individual
multiples and financial benchmarking metrics for each company observed by Citi.  This is
especially egregious, since Citi claims to have observed "multiples of firm value to calendar years
2020 and 2021 estimated revenue of 4.9x to 11.8x and 5.0x to 9.8x, respectively," yet
simultaneously claims the median of the selected companies was 4.9x revenue for 2020 and 5.0x
revenue for 2021 without explanation of how the median multiple can simultaneously be the
lowest multiple in each case.

36.    With respect to Citi's *Selected Transactions Analysis* for Corindus the Proxy the
Proxy fails to disclose the individual multiples and financial benchmarking metrics for each of
companies observed by Citi.  Again, this information is crucial to Common Stock holders since
Citi claims to have observed "FV/LTM Revenue Multiples of 6.5x to 23.4x and an illustrative
range for FV/NTM Revenue Multiples of 5.9x to 20.6x," while inexplicably again claiming the
lowest end of the multiples again were the median.

37.    The Proxy also discloses that Corindus agreed to pay Citi for its services in connection with the merger an aggregate fee of approximately $23.6 million, $3 million of which became payable upon delivery of Citi's opinion to the Board, and the remaining $20.6 million is totally contingent upon the closing of the Proposed Transaction.  Moreover, Citi and its affiliates in the past have provided and continues to provide certain investment banking, commercial banking and other financial services to Siemens and its affiliates unrelated to the proposed merger, for which services Citi and its affiliates have received and expect to receive compensation, including, during the two-year period prior to the date of Citi's opinion, having acted or acting as joint bookrunner in connection with the initial public offering of Healthineers by Siemens; and as lead arranger, administrative agent and/or bookrunner in connection with certain investment grade loans and investment grade bond issuances of Siemens AG.

38.    In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming special meeting of the Company's shareholders, Plaintiff will be unable to cast an informed vote regarding the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

### COUNT I

**Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9**

39.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

41.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

42.     The omission of information from a Proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

43.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Corindus; (ii) the background process leading up to the execution of the Merger Agreement; (iii) the calculation of the Preferred Stock Consideration; and (iv) potential conflict of interests affecting certain members of the Board.

44.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information

to the Company's common shareholders although they could have done so without extraordinary effort.

45.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that the Board, Corindus's management, Corindus's outside legal counsel, all reviewed and assessed financial projections for Corindus, and further states that the Board considered the fairness opinion provided by Citi and the assumptions made and matters considered in connection therewith, which included financial projections for Corindus.  Further, the Individual Defendants were privy to and had knowledge of the projections for Corindus and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

46.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required

to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

47.     Corindus is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

48.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the special meeting of the Company's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     The Individual Defendants acted as controlling persons of Corindus within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Corindus, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

53.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and/or permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 13, 2019

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*